```
                      UNITED STATES DISTRICT COURT

                        DISTRICT OF PUERTO RICO


UNITED STATES OF AMERICA,

                Plaintiff,
v.                                        Docket No. 18-206

                                          San Juan, Puerto Rico
ANTHONY LOUIS VISALDEN ROSADO,            June 5, 2019

                Defendant.
  _____

                             SENTENCE

        BEFORE THE HONORABLE JUDGE AIDA M. DELGADO COLON,

                  UNITED STATES DISTRICT JUDGE.

  _____

APPEARANCES:

For the Government:       Mr. Alexander Alum, AUSA


For the Defendant:        Mr. Luis Rivera Rodriguez, Esq.
```

Proceedings recorded by stenography. Transcript produced by CAT.

1                           I N D E X
2  WITNESSES:                                              PAGE
3       None offered.
4
5  EXHIBITS:
6       None offered.

```
                              San Juan, Puerto Rico
                              June 5, 2019
                              At or about 12:38 PM
                *   *   *
```

COURTROOM DEPUTY: Criminal case 18-206, United States of America versus Anthony Louis Visalden Rosado, set for sentencing hearing. The defendant is present in court and being provided with the services of the court interpreter.

Appearing on behalf of the government, AUSA Alexander Alum. And appearing on behalf of the defendant, Attorney Luis Rivera Rodriguez.

MR. ALUM: Good afternoon, Your Honor. The government is ready to proceed.

MR. RIVERA RODRIGUEZ: Good afternoon, Your Honor. The defense is ready to proceed.

THE COURT: I have reviewed the Plea Agreement at docket 60, the Presentence Report at docket 92, so I'm asking, Counsel, whether you discussed with your client --

MR. RIVERA RODRIGUEZ: May we have a second, Your Honor? The defendant hasn't arrived yet to the podium and he hasn't been provided the earphones.

I apologize, Your Honor. Yes. We have the Presentence Report and we have discussed it with the defendant.

THE COURT: Okay. So in essence, are there any last

1  minute clarifications?

2  MR. RIVERA RODRIGUEZ: Not really, Your Honor. I
3  know the parties agreed to a certain level for the home
4  invasion and the possession of the firearms that will have
5  yielded a total offense level of 20. However, the Presentence
6  Report considered the amount of loss in this case or the
7  amount that was supposedly subtracted from the house, and it
8  was the amount of 45 thousand dollars if I can recall
9  correctly.

10  And that added one additional point or level to the
11  guideline range, so now we are facing level 21, to 46 -- so
12  that will alter the amount of time that was agreed to by at
13  least a couple of more months.

14  That's about it, Your Honor.

15  THE COURT: Well, that depends, because the sentence
16  recommendation involved a range of 125 to 153. And if you
17  look at it, at the very end, even though it may appear at a
18  glance that it's a higher amount, still the range may be,
19  well, encompassing.

20  MR. RIVERA RODRIGUEZ: Yes, Your Honor. I understand
21  that.

22  THE COURT: Okay. So anything else?

23  MR. RIVERA RODRIGUEZ: On behalf of the defendant,
24  Your Honor, essentially we filed a sentencing memorandum with
25  this Court. We have included letters from family members and

1  from a teacher that I know of, and a neighbor.
2          Essentially, Your Honor, the defendant before you is
3  a young man who has no prior criminal record, is a person that
4  was reared in a good home, although we acknowledge that he has
5  been battling with the diagnosis of a learning disability.
6  Apparently he suffers from ADHD, and he's person who is easily
7  manipulated by other individuals.
8          We don't -- he takes responsibility for what he did.
9  There was a reason he did this.  He was in a very bad
10 economical situation after the passing of hurricane Maria, and
11 he regretfully entertained the idea of committing this
12 offense.
13         I would like the Court to take into consideration the
14 defendant at no time hurt any of the victims involved in this
15 situation.  That he surrendered when he was approached by
16 officers.  He did not resist arrest, nor he caused any harm to
17 the -- either the victims or the police force that arrested
18 him.
19         We submit to the Court that being an individual with
20 attention deficit and hyperactivity disorder, he should be
21 considered as a person that, after passing several
22 psychological evaluations, is an individual who has really
23 been battling for society -- I believe if he's given a chance,
24 he will not commit this type of offense.
25         He had been employed.  He had been working.  Given

1  that he had problems during the hurricane and he was not
2  working for a certain period of time -- and the family members
3  are present in court.  They are supportive of the defendant.
4  They are -- come in full support of him.
5          And I beg the Court to give him the least amount of
6  time possible within the constraints of the guidelines and the
7  agreement that we have signed with the government.  That would
8  be it, Your Honor.
9          THE COURT:  Thank you.
10         Addressing myself to the defendant, sir, do you
11 remember having discussed the Presentence Report with your
12 attorney?
13         THE DEFENDANT:  Yes.
14         THE COURT:  And do you understand that the
15 information within the report is correct?
16         THE DEFENDANT:  Yes.
17         THE COURT:  Okay.  Is there anything that you would
18 like to mention and that I should consider before sentence is
19 imposed?
20         THE DEFENDANT:  Yes, Your Honor.
21         THE COURT:  Go ahead.  I'll listen to you.
22         THE DEFENDANT:  I would first like to apologize to my
23 family and to the injured parties for having made them go
24 through this process, this hard process that they are
25 undergoing.  And this -- I'm sorry.

1       THE COURT: Go ahead.

2       THE DEFENDANT: And I have learned from this. This
3  has taught me.

4       MR. RIVERA RODRIGUEZ: Okay. He can't continue, Your
5  Honor. That's all. He thanks the Court.

6       THE COURT: Okay. I'll hear from the government.

7       MR. ALUM: Your Honor, this case underscores a wider
8  problem here in Puerto Rico, and that is the problem of
9  violent crime. This is something that this Court knows all
10 too well, that the First Circuit has recognized, that
11 gun-related violent crime is an acute problem in Puerto Rico.

12      Specifically, I'm referring to the case of *United
13 States versus Narvaez Soto,* 773 F3d 282. That's a 2014 case.

14      This case also underscores something that Judge Fuste
15 recognized in the case of *United States versus Gonzalez Roman*,
16 that violent crime occurs on every corner, all over the
17 island, and everyone is at risk 24 hours a day, seven days a
18 week. Even a person's home is not a safe place, as this case
19 demonstrates. The cite for the *Gonzalez Roman* case is 115
20 F.Supp.3d 271. That's a 2015 case.

21      This defendant, Judge, and his codefendant, they went
22 into a house brandishing guns. They tied up the victims,
23 committed a robbery, stealing guns and over 40,000 dollars in
24 cash, which fortunately was recovered almost immediately upon
25 the defendant's arrest.

1  One thing that also has to be emphasized is the
2  nature of one of the weapons involved.  It wasn't an
3  ordinarily pistol or revolver.  It was a machine gun.
4  Something that the 9th Circuit has likened to bombs, missiles,
5  and biochemical agents.  And that's the case of *United States*
6  *versus Henry,* 688 F3d 637.  That's a 2012 case.
7  This is not an offense, Judge, that occurred spur of
8  the moment.  This was after a well thought out robbery, as the
9  discovery that was produced to the defense demonstrated.
10 The defendants used ropes to climb up a hill, to get
11 onto the victim's property.  They wore masks.  And they knew
12 exactly what they were looking for.  And what I mean to say
13 with all this is that this was premeditated, well thought out,
14 and I would submit that that is an aggravating factor.
15 Judge, if we take -- we are mindful that this is the
16 defendant's first known offense.  First known arrest.  Yet
17 given the seriousness of the offense involved, given the fact
18 that there are real victims in this case, people with -- who
19 suffered concrete losses, both physical and psychological, we
20 are recommending the Court to impose a sentence of 120 months
21 as to Count II, and a sentence of 33 months as to Count III,
22 for a total sentence of 153 months.
23          THE COURT:  Thank you.
24          Very well.  On November the 5th, 2018, the defendant,
25 Anthony Luis Visalden Rosado, plead guilty to Counts II and

III of the Indictment filed in criminal case 18-206. Count II charges a violation Title 18 Section 924(c)(1)(A) and (2). And Count III charges a violation of Title 18, Section 1951(a) and (2), class A and C felonies.

The November the 1st, 2018, edition of the sentencing guideline has been used to apply the advisory guideline adjustments pursuant to the provisions of Guideline Section 1(B)(1.11)(a).

As to Count II, based on the provisions of Guideline 2(K)(2.4)(b), Chapters Three and Four of the guidelines shall not apply in this count in which Mr. Visalden has been held responsible for brandishing a firearm in furtherance of a crime of violence.

The guideline sentence is the minimum term required by Statute. That is 84 months. That must be imposed consecutive to the term of imprisonment in any other count.

As to Count III, the guideline for a Title 18 Section 951 offense is found at Section 2(B)(3.1) of the guidelines, which provides that an offense involving robbery has a base offense level of 20 pursuant to Guideline Section 2(B)(3.1)(a).

Since there were two victims restrained, a two level enhancement applies pursuant to Section 2(B)(3.1)(b)(4)(B).

Since among the properties stolen there were firearms, a one level enhancement is warranted pursuant to

Guideline Section 2(B)(3.1)(b)(6).

Because the amount stolen was of approximately 45 thousand dollars, a one level enhancement applies pursuant to Guideline Section 2(B)(3.1)(b)(7).

Since he has demonstrated acceptance of responsibility for his participation in the offense, the offense level is reduced by three levels pursuant to Guideline Section 3(E)(1.1)(a) and (b). There are no other applicable guideline adjustments.

Based on a total offense level of 21 and a Criminal History Category of I, the Guideline Imprisonment Range is from 37 to 46 months, with a fine range of 15,000 to 150,000 dollars, plus a supervised release term of at least one year, but not more than three years, as to Count III, and from two to five years as to Count II.

The Court has reviewed the advisory guideline calculations, finds that the computations done by the probation officer are correct, and considers the nature and circumstances of the offense.

Under the 3553 factors, the Court considers defendant's age, he's 25, a U.S. citizen. He completed high school, has been employed -- was employed at First Class Service Company prior to his arrest.

He's physically healthy. However, he has been diagnosed with ADHD and learning disabilities. Further, the

1  defendant has a reported history of marijuana use and abuse.
2        This is the defendant's first known arrest and
3  conviction.
4        The Court takes into consideration the elements of
5  the offense and his participation in the offense.  As alluded
6  here by the government, I agree with the fact that the type of
7  offense that was committed and the description of the
8  circumstances do reveal that the offense was a premeditated
9  one, that they -- one could reasonably infer that they knew
10 what they were looking for, and that the robbery entailed the
11 restrictions of two victims, which is a factor already
12 considered under the guidelines.  And that monies were taken
13 from the residence, and that that constitutes a crime of
14 violence.
15       More so, when it goes to the illegal possession of
16 the weapon in furtherance of the crime of violence, the fact
17 that it was a machine gun certainly raises a red flag.
18       The government correctly points to the circumstances
19 in Puerto Rico society in which it's true, everyone lives in
20 fear given the high crime rate, which exceeds those of many
21 cities in the United States added all together, in which
22 everyone lives in fear, moves in fear, and is always concerned
23 for its safety, this because of the surge in crimes that are
24 gun related, violent crimes that are drug related.  More so,
25 those involving automatic weapons that per se are very

dangerous and given the damages that may cause to innocent bystanders when those type of weapons are fired.

So in the Plea Agreement, which is also considered, in essence the parties' agreement provided for a recommendation -- and let me put it this way, as to Count II, the government was reserving the right to recommend a sentence of not more than 120 months, and the defendant could ask for a sentence of 96.

As to Count III, the parties were going to jointly recommend a sentence at the lower end of the applicable guideline, for a base offense level of 20. And here we have a base offense level of 21, but still the sentence may well end up running -- may be within the same guideline range. Exposure is quite similar.

Considering all the 3553 factors, the evidence on record, the government's recommendation, the factual scenario in what has transpired here, it is the judgment of this Court that Mr. Anthony Louis Visalden Rosado is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 100 months as to Count II, and 37 months as to Count III, to be served consecutively to each other, for a total term of imprisonment of 137 months.

Upon release from confinement, the defendant shall be placed on supervised release for a term of three years as to each count, to be served concurrently with each other under

1  the following terms and conditions.
2       The defendant shall not commit another federal, state
3  or local crime, and shall observe the standard conditions of
4  supervised release recommended by the Sentencing Commission
5  and adopted by the Court.
6       The defendant shall not unlawfully possess controlled
7  substances.  He shall refrain from possessing firearms,
8  destructive devices and other dangerous weapons.
9       The defendant shall participate in a program or
10 course of study aimed at improving vocational level and/or
11 complete vocational training.  In the alternative, participate
12 in a job placement program recommended by the probation
13 officer.
14      The defendant shall provide the probation officer
15 access to any financial information upon request, and shall
16 assist in the collection of a DNA sample as directed by the
17 probation officer pursuant to the revised DNA collection
18 requirements in Title 18 Section 3563(a)(9).
19      The defendant shall submit his person, property,
20 house, vehicle, papers, computers, and any other electronic
21 communication or data storage device and media to a search
22 conducted by a probation officer at a reasonable time and in a
23 reasonable manner, based upon reasonable suspicion of
24 contraband or evidence of a violation of a condition of
25 release.  Failure to submit to a search may be grounds for

1 revocation.

2 The defendant shall warn any other occupants that the
3 premises may be subject to searches pursuant to this
4 condition.

5 The defendant shall participate in an approved
6 substance abuse monitoring and/or treatment services program.
7 He shall refrain from unlawful use of a controlled substance,
8 and submit to a drug test within 15 days of release.
9 Thereafter submit to random drug testing, no less than three
10 samples during the supervision period, and not to exceed 104
11 samples per year in accordance with the Drug After Care
12 Program policy of the U.S. Probation Office as approved by the
13 Court.

14 If deemed necessary, the treatment will be arranged
15 by the officer in consultation with the treatment provider.
16 The defendant is required to contribute to the cost of
17 services rendered in an amount arranged by the officer based
18 on the ability to pay or availability of third-party payments.

19 The Court finds that the conditions imposed are
20 reasonably related to the offense of conviction under Title 18
21 Section 3553, and are also consistent with pertinent policy
22 statements issued by the Sentencing Commission under Title 28
23 Section 994(a).

24 No fine is imposed. A monetary assessment fee of 100
25 dollars as to each count, for a total of 200, is imposed.

1     As agreed, forfeiture pursuant to Title 18 Section
2  924(d) and Title 28 Section 2461(c) is Ordered, in which the
3  defendant is to surrender any rights, title or interest in the
4  Glock pistol, serial number DTB 303, model 22, and the .40
5  caliber Glock pistol serial number BOW 587.
6     Still, as to the waiver of appeal, the defendant had
7  agreed that he was to waive his right to appeal from the
8  judgment of conviction and sentence were you to be sentenced
9  to 153 months or less. He has been sentenced to less than
10 153, so I take it that the waiver of appeal stipulation has
11 been triggered, and that if defendant is to undertake an
12 appeal, the government will seek for dismissal of the same.
13    However, out of an abundance of caution, if a
14 fundamental defect is identified and the defendant decides to
15 file his Notice of Appeal, I'll be asking Mr. Rivera to remain
16 as the attorney of record until he does so and report to the
17 Court of Appeals that defendant may be in need of court
18 appointed counsel.
19    MR. RIVERA RODRIGUEZ: Yes, Your Honor.
20    THE COURT: Anything else?
21    MR. RIVERA RODRIGUEZ: Yes, Your Honor. If possible,
22 I would like the Court to issue a recommendation to the Bureau
23 of Prisons that the defendant be designated to serve his
24 sentence at Miami, Florida. And that he receives the alcohol
25 and drug program, if possible.

1   THE COURT: Defendant is recommended to receive drug
2 rehabilitation treatment while under the custody of the Bureau
3 of Prisons, drug rehabilitation treatment and vocational
4 training. Recommendation for designation issued as requested.
5   Anything else?
6   MR. ALUM: And, Your Honor, the government requests a
7 dismissal of remaining counts.
8   THE COURT: So Ordered.
9   Mr. Rivera?
10   MR. RIVERA: That's all.
11   THE COURT: Okay. The parties are excused.
12   (At 1:02 PM, proceedings concluded.)
13               *     *     *

```
U.S. DISTRICT COURT    )
DISTRICT OF PUERTO RICO)


     I certify that this transcript consisting of 17 pages is
a true and accurate transcription to the best of my ability of
the proceedings in this case before the Honorable United
States District Court Judge Aida M. Delgado Colon on June 5,
2019.





S/ Amy Walker
Amy Walker, CSR 3799
Official Court Reporter
```